## IN RE ESTATE OF CARL J. PETERSON.
### JOHN W. CLOVER, APPELLANT.[1]

May 8, 1936.

No. 30,814.

[1]Reported in 267 N. W. 213.

*Fowler, Carlson, Furber & Johnson,* for appellant.

*Jenswold, Jenswold & Dahle,* for Augusta Peterson, respondent.

STONE, JUSTICE.

John W. Clover, as executor of the estate of Carl J. Peterson, deceased, appeals from an order granting a motion of respondent (widow of the deceased) dismissing his appeal from the probate to . the district court.

No question is made touching the merits. The issue now determinative is one purely of procedure. In April, 1932, the probate court of Isanti county made an order settling Mr. Clover's final account as executor and surcharging it, as to certain important matters, in substantial sums. "As executor," and not otherwise, Mr. Clover appealed to the district court. Neither then nor later did he file an appeal bond. (The statute, 2 Mason Minn. St. 1927, § 8985(2), requires a bond only when some person "other than the representative" appeals.) Respondent moved to dismiss the appeal "for the reason that the notice of appeal is improper and insufficient and does not confer jurisdiction upon this court to hear the appeal." That motion denied, there was a trial on the merits, resulting, December 29, 1934, in a decision largely favorable to the executor and directing the entry of judgment accordingly.

The term of Judge Giddings, before whom the trial had been had, expired shortly thereafter, January 7, 1935. He was succeeded by the Honorable Leonard Keyes. April 27, 1935, respondent moved for a new trial on 38 separately stated grounds. By order of July 6, 1935, Judge Keyes granted that motion without indicating his reasons for so doing. (That order was not appealable. 2 Mason Minn. St. 1927, § 9498.) The case coming on for trial at the September, 1935, term, the widow, respondent here, again moved to dismiss the appeal from the probate court, this time upon the ground, "(1) That said appeal [from the probate court] is not taken by an aggrieved party in that John W. Clover, as executor of the estate above named, is not aggrieved by the order and decree

from which said appeal is taken, and (2) that if said appeal is by John W. Clover as an individual and not in his representative capacity, he, as an individual, being the party aggrieved, no appeal bond has been filed herein as required by statute." From the order granting that motion this appeal is taken.

Under 2 Mason Minn. St. 1927, § 8984, the appeal from the probate court could have been "taken only by a party aggrieved" by the order to be reviewed. The position of respondent is that the executor was not aggrieved by the order surcharging his account; that Mr. Clover was aggrieved only in his personal or individual interests and so could not appeal as executor. Hence, it is said, his attempt to appeal as representative was futile and so properly dismissed.

That view we reject notwithstanding the substantial support it has in the reports. Among the cases sustaining it are the following: In re Estate of Craig, 101 Neb. 439, 163 N. W. 765; In re Estate of Mathews, 125 Neb. 737, 252 N. W. 210; Allen v. Kinder, 150 Okl. 156, 300 P. 653; Wiley v. Wiley, 69 Ind. App. 431, 122 N. E. 25; In re Estate of Baird, 102 Kan. 317, 169 P. 1149. Such cases as In re Estate of Nelson, 194 Minn. 297, 260 N. W. 205, holding that an administrator or executor whose account has been settled is not interested, in his representative capacity, in the distribution of the estate, are not in point.

With great deference for its authors, we cannot follow the reasoning which concludes that the representative cannot, in his representative as distinguished from his individual capacity and interest, litigate issues as to the propriety of his actions as representative. The decision of such questions, of course, may react financially on him as an individual. But the converse effect on the interest of the estate offsets that argument and shows how impractical is the attempt to separate, for all purposes, the personal from the official status (status rather than interest is determinative), in respect to the person's official conduct. His action remains official unless so wrongful as to put it outside the field of his authority. That initial character remains even though, because wrongful, it projects pecuniary effect beyond the official into the field of individ-

ual interest. The subject of inquiry is not thereby altered in character. It is not removed from the category of the official to that of the individual, although its result in damage may be.

It is always the official conduct of the representative that is the subject of inquiry in the settlement of his accounts. He keeps those accounts in his representative capacity. They are the record of his official conduct, right or wrong. The subject matter thereof does not change back and forth from one category to another as the resulting judgment goes for or against the representative. Inasmuch as the whole issue concerns his conduct as representative, and the accounts thereof which he has kept as representative, we are unable to conclude that an executor or administrator, as such, cannot defend his own official record, i. e., his account.

If his account is allowed without surcharge and the heirs appeal, but the representative prevails, he gets his costs and disbursements (including attorneys fees if specially allowed) as representative and not as an individual. That they ultimately enhance his personal purse does not make the subject matter of the litigation personal rather than official in character. If others may so attack him in his representative capacity, why may he not in the same capacity resist the attack? When attacked in one capacity why must he defend in another? What reason is there why he must vindicate solely in his personal status his conduct and rights in the other and differing status as representative? When his official conduct is condemned the reaction necessarily reaches his personal interest. But the fact remains that it is official conduct that is condemned. Obviously, then, the official is "aggrieved" notwithstanding the result as to the person who happens to be the official. See In re Estate of Johnson, 194 Minn. 300, 260 N. W. 295.

It is, after all, a matter of practical business with which we are dealing. The statutory procedure is intended to be plain and easily workable rather than complex and deceptive. It should not be made a trap for the unwary. The problem should not be disposed of on an impractical ground and so brought to a result in conflict with practical requirements. Legal traps of finespun technicality should be avoided. The interest of no estate requires that the representa-

348

tive be unjustly dealt with. Impractical and unjust would be a rule compelling representatives always to defend their official conduct and their official record thereof solely as individuals. The estate is sufficiently protected by the power of the probate court, in settling their accounts, to charge them with the results of improper conduct.

It seems to us that the reason of the matter is refined beyond the breaking point by the proposition that: "Moore as administrator of the estate and Moore in his own right or person in a legal sense are two separate and distinct persons." Moore v. Ferguson, 163 Ind. 395, 400, 72 N. E. 126, 128. If so, if they are "separate and distinct persons," they should be able to contract together. But they cannot do that for the simple reason that there is only one person, whereas there must be at least two in order to make a contract. Gorham's Admr. v. Meacham's Admr. 63 Vt. 231, 22 A. 572, 13 L. R. A. 676.

In Moore v. Ferguson, 163 Ind. 395, 72 N. E. 126, the view which we are rejecting was carried to its logical end, one which we deferentially submit is legally untenable. Moore had appealed both in his representative and individual capacity. He had not made himself, as administrator, "a party appellee." For that reason his appeal was dismissed. In other words, the decision was based at last upon the assumed divisibility of that which is intrinsically indivisible, that is, the personality of the individual. One objection to the opposed conclusion was that [163 Ind. 400] "under the circumstances, the estate, by its administrator, should not be made to occupy the position of appellant, but should have been made an appellee." There again, it occurs to us, an essential and basic factor of decision was overlooked. A probate proceeding is *in rem*. The *res* itself is not and can never be a party litigant. Hansen v. Northwestern Nat. Bank, 175 Minn. 453, 221 N. W. 873, 60 A. L. R. 605. Litigants are always human beings, or, as in some cases, corporations as legal entities. The estate, the *res* itself, by reason of its very inanimate nature, is the mere subject of the litigation and cannot, we repeat, be so animated by any legerdemain of the law as to become a litigant. The simple truth is, in respect to an adminis-

trator or executor, that but one person is involved. He acts and is interested in two separate and differing legal capacities, one that of an individual, and the other that of the representative. For reasons already appearing, he cannot, simply because of the two capacities, contract with himself. For the same obvious and inescapable reason, he cannot oppose himself in litigation. If in his individual capacity he has an ordinary claim against the estate which is the subject of litigation, the opposition will be furnished not by the *res*, which is the subject of the litigation, but by one or more of the individuals, an heir or another creditor, adversely interested.

For the reasons stated, the order under review is reversed.

